1  **ADANTE D. POINTER, ESQ., SBN 236229**
   **PATRICK M. BUELNA, ESQ., SBN 317043**
2  **LATEEF H. GRAY, ESQ., SBN 250055**
   **MARLON L. MONROE, ESQ., SBN 347981**
3  POINTER & BUELNA, LLP
   155 FILBERT STREET, SUITE 208
4  OAKLAND, CA 94607
   Tel: (510) 929-5400
5  Email: APointer@LawyersFTP.com
   Email: Pbuelna@LawyersFTP.com
6  Email: LGray@LawyersFTP.com
   Email: MMonroe@LawyersFTP.com
7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN FRANCISCO DIVISION

11

| | |
|---|---|
| KEITH BRYANT, an individual;<br><br>                    Plaintiff,<br>v.<br><br>CITY OF RICHMOND, a municipal corporation; ALEXANDER CAINE, in his individual capacity as a law enforcement officer for the CITY OF RICHMOND POLICE DEPARTMENT; EVAN FARMER, in his individual capacity as a law enforcement officer for the CITY OF RICHMOND POLICE DEPARTMENT; RILEY SANTIAGO, in his individual capacity as a law enforcement officer for the CITY OF RICHMOND POLICE DEPARTMENT; and DOES 1-100, inclusive.<br><br>                    Defendants. | Case No. 4:23-cv-02738-LB<br><br>JOINT CASE MANAGEMENT STATEMENT<br><br>Date: 11/16/2023<br>Time: 11:00 am<br>Courtroom: B, 15th Floor<br>Judge: Honorable Judge Laurel Beeler<br>Trial Date:     03/03/2025<br>Action Filed:  06/01/2023 |

    Pursuant to this Court's June 2, 2023 Order, as well as Federal Rules of Civil Procedure Rule 26(f) and Local Rule 16-1, the parties submit the following report, by and through their respective counsel of record:

# JOINT CASE MANAGEMENT CONFERENCE STATEMENT

## I. JURISDICTION AND SERVICE

Plaintiff:  This action arises under Title 42 of the United States Code, § 1983. Title 28 of the United States Code, §§ 1331 and 1343, confer jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in the City of Richmond, County of Contra Costa, California, which is within the judicial district of this Court. Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367 over the state law claims, which are related to federal claims in this action in that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants are believed to reside in this district, and all incidents, events, and occurrences giving rise to this action occurred in this district.

Defendants City of Richmond and Officers Alexander Caine and Riley Santiago ("Defendants"):  Defendants do not contest federal jurisdiction, personal jurisdiction or venue.

## II. FACTS

**PLAINTIFF'S STATEMENT OF THE CASE**

In the early morning of February 23, 2022, at approximately 12:15 a.m., Plaintiff and a passenger were driving in a Mercedes CLS-550 Coupe in Richmond, California, near Barrett Avenue in Richmond.

Defendant CAINE of the Richmond Police Department ("Defendant Department" or "RPD ") saw Plaintiff driving in a Mercedes CLS 550 Coupe and watched Plaintiff drive past Defendant CAINE's police vehicle

Immediately after the CLS 550 Coupe passed Defendant CAINE, Defendant CAINE began to follow the vehicle Plaintiff was driving. Defendant CAINE ran the CLS 550 Coupe's license plates. Defendant CAINE then activated his emergency lights and pulled the CLS 550 Coupe over.

Following the direction of Defendant CAINE, Plaintiff ultimately stopped on Carlson Avenue, near Imperial Street.

Defendant CAINE approached Plaintiff and informed Plaintiff that the plates did not match the description of the vehicle being driven. Specifically, Defendant CAINE claimed that the license plate was registered to a Mercedes "coupe," which he presumed to be a two-door vehicle. Plaintiff informed Defendant CAINE that the model of the car he was driving is also a coupe, despite being a four-door vehicle. Defendant CAINE disregarded Plaintiff's explanation and commanded Plaintiff to provide his license and the vehicle's registration.

Plaintiff provided his driver's license to Defendant CAINE but was having difficulty finding the CLS 550 Coupe's registration. After performing a reasonable and diligent search of the documents in the CLS 550 Coupe, Plaintiff determined that he did not have the registration in his possession.

Upon learning that Plaintiff did not have the CLS 550 Coupe's registration, Defendant CAINE determined that he was entitled to search the CLS 550 Coupe for the registration because Plaintiff is required to have his registration on him by law. Plaintiff informed Defendant CAINE that he was not the vehicle's registered owner and that Plaintiff's wife owned the vehicle. Additionally, Defendant CAINE stated that the CLS 550 Coupe's license plates did not match the vehicle's VIN. As this exchange occurred, Defendant CAINE's partner was talking to Plaintiff's passenger, who was seated in the CLS 550 Coupe's rear passenger side seat. Once Plaintiff realized that his passenger had given her identification to the officer, Plaintiff told her to get her identification back because it was unnecessary for her to provide him with her information.

Defendant CAINE responded to Plaintiff's interaction with his passenger by telling Plaintiff that he needed to get out of the car so that Defendant CAINE could search the vehicle for registration documents. Plaintiff complied and got out of the CLS 550 Coupe.

Thereafter, Defendant CAINE performed an illegal search wherein he patted Plaintiff outside the CLS 550 Coupe. Defendant CAINE then instructed Plaintiff to walk toward the rear of the CLS 550 Coupe and sit on the front bumper of Defendant CAINE'S police vehicle, which was parked behind the CLS 550 Coupe.

After having Plaintiff sit on the front bumper of his patrol car, Defendant CAINE walked to the front of the CLS 550 Coupe. Defendant CAINE shined his light on the lower driver's side corner of the CLS 550 Coupe's windshield and at least twice radioed the VIN to dispatch. Dispatch confirmed that the car was a Mercedes Coupe. At that point, Defendant Caine told Plaintiff that the car could not be a coupe because it had four doors.

Defendant CAINE went to the driver's side door and, without the consent of Plaintiff and/or probable cause, began searching the CLS 550 Coupe for registration documents. After two (2) to three (3) minutes of Defendant CAINE searching the CLS 550 Coupe, Defendant CAINE asked Plaintiff if the registration was in the glove compartment. Plaintiff responded with words to the effect of, "Why do you need to go into the glove compartment?" Defendant CAINE continued to voice that he was entitled to go into the glove compartment to search for registration documents to ensure that Plaintiff was not lying about not having the registration in his possession.

Plaintiff stated that he did not have the key to the glove compartment in his possession and had never opened up the CLS 550 Coupe's glove compartment.

In response, Defendant CAINE stated that the officers needed to perform field sobriety tests because Defendant CAINE alleged he could smell alcohol on Plaintiff's breath. Throughout, Plaintiff was adamant that he was not under the influence of alcohol.

Defendant FARMER performed the field sobriety tests on Plaintiff. Defendant

FARMER had Plaintiff stand on one leg and count to ten (10). During portions of the field sobriety tests, Defendant CAINE continued to search the back seat of the CLS 550 Coupe. After Plaintiff completed the portion of the tests where he had to stand on one leg and count, Defendant FARMER mouthed to Defendant CAINE words the effect of, "He's fine."

Upon hearing that Plaintiff had passed the field sobriety tests' standing portion, Defendant CAINE was still unsatisfied with the results. Defendant CAINE immediately informed Plaintiff that they had to do a Preliminary Alcohol Screening ("PAS") to determine if Plaintiff had been drinking. Plaintiff continued to deny that he had been drinking that night and questioned if he even had to participate in the PAS, as Defendant CAINE had already unlawfully searched the CLS 550 Coupe. After Defendant CAINE's constant threats to impound the CLS 550 Coupe, Plaintiff was eventually coerced into participating in the PAS.

Defendant FARMER produced a PAS machine that measures the blood alcohol content of a subject by having the subject blow into the machine. Defendant FARMER administered the PAS at least three times. Every time the PAS was administered, Plaintiff was under the legal limit. Despite Plaintiff blowing under the legal limit, Defendant CAINE continued to accuse Plaintiff of being intoxicated.

The final time Plaintiff tested under the legal limit, Defendant CAINE asked Plaintiff for the CLS 550 Coupe's keys. Plaintiff responded by asking Defendant CAINE why he needed the keys to the CLS 550 Coupe. At that point, Defendant CAINE told a handcuffed Plaintiff that he could now take the CLS 550 Coupe's keys. Defendant CAINE removed the CLS 550 Coupe's keys from Plaintiff's pocket.

Defendant CAINE took the CLS 550 Coupe's keys and headed to the front passenger side of the CLS 550 Coupe. Defendant CAINE opened the front passenger side door and attempted to use the keys taken from Plaintiff to open the glove compartment. When none of the

keys proved successful, Defendant CAINE pulled a tool from his person and attempted to break the lock to the glove compartment. Defendant CAINE attempted to break the lock for approximately three (3) minutes when Defendant SANTIAGO asked if Defendant CAINE needed him to open the lock.

Defendant CAINE said sure and walked away from the CLS 550 Coupe. Shortly thereafter, Defendant SANTIAGO indicated that he opened the glove compartment. Defendant CAINE walked towards the vehicle and replied with words to the effect of "Perfect" when he saw the glove compartment's alleged contents. However, throughout the process, Defendant CAINE's body camera was situated in a manner that did not allow the camera to capture what Defendant CAINE was doing while searching the car, nor did the body-worn camera capture the alleged contents of the glove compartment.

After seeing the glove compartment's contents, Defendant CAINE walked back over to Plaintiff and began walking Plaintiff toward his police car. Plaintiff asked if he or his passenger could leave with the CLS 550 Coupe. Defendant CAINE responded no because the car was being impounded because Plaintiff was going to jail. Plaintiff asked Defendant CAINE why he was going to jail, to which Defendant CAINE responded, "Why do you think you are going to jail?" When Plaintiff complained that he was being taken to jail, Defendant Caine informed Plaintiff that he was going to jail because they found a gun in the glove compartment.

After arresting Plaintiff, Defendant CAINE let Plaintiff's passenger leave the scene without further detention. Defendant CAINE then transported Plaintiff to jail for booking. Defendant CAINE also frisked Plaintiff, examining every inch of his body for contraband and items not allowed in jail.

Once Plaintiff arrived at the jail, he was put into a holding cell. Defendant CAINE had

Plaintiff remove his shoestring, rings, jewelry, belt, and any items that Plaintiff still had on his person.

After removing all of Plaintiff's personal belongings, Defendant CAINE asked Plaintiff to submit a DNA sample. When Plaintiff protested providing a DNA sample, Defendant CAINE responded, "It's ok, we will get the sample after the judge signs the search warrant."

Once the judge signed the search warrant, a yet-to-be-identified officer obtained a DNA sample from Plaintiff.

The Contra Costa County District Attorney's Office dismissed all criminal charges against Plaintiff on March 25, 2022. Plaintiff is innocent and had nothing to do with the firearm that was allegedly found.

As a consequence of Defendants' violations of Plaintiff's federal civil rights under 42 USC §1983 and the Fourth Amendment, Plaintiff was physically, mentally, emotionally, and financially injured and damaged as a proximate result of Defendant's wrongful conduct.

Defendants:  Defendants deny Plaintiff's allegations and claim that their conduct was lawful and reasonable given the totality of the circumstances confronting the officers.  While Defendants dispute certain allegations and contentions in Plaintiff's statement, those disputes are not relevant to the upcoming case management conference and need not be addressed herein.  The individual Defendants further aver that they are entitled to qualified immunity as their actions were objectively reasonable given the information known to them at the time and given Plaintiff's actions.  Defendants further dispute Plaintiff's characterization of the various facts and also dispute Plaintiff's claimed damages.

### III. LEGAL ISSUES

Defendants dispute liability and that they violated Plaintiff's constitutional rights. In short, presently, the issues are as follows:

- Whether the Defendants violated Plaintiff's right to be free from unreasonable search and seizure;
- Whether the Defendants falsely arrested and/or imprisoned Plaintiff;
- Whether Defendants violated the Bane Act (Civil Code § 51);
- Whether the Defendants were negligent;
- Whether the allegedly unconstitutional actions and/or omissions of Defendants were the result of a custom or policy of Defendant City of Richmond, pursuant to *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978);
- The amount of damages, if any, that are appropriately owed by Defendants; and
- Whether any available immunities are applicable to Defendants, including but not limited to qualified immunity and immunities arising under California law.

### IV. MOTIONS

The parties do not have any pending motions at this time. The parties anticipate motions for summary judgment may be filed in this matter at a later time. Discovery motions, motions in limine, a motion for bifurcation of damages and liability, and pretrial motions may also be necessary if the case progresses and issues arise amongst the parties.

### V. AMENDMENT OF PLEADINGS

Plaintiffs have not filed any amendments to date.

### VI. EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and confirm that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. (See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.)

**VII.  DISCLOSURES**

The parties have met and conferred regarding initial Rule 26(a) disclosures and will exchange initial disclosures on or before November 27, 2023..

**VIII.  DISCOVERY**

The parties have conducted no discovery to date. Please see the scheduling section for the discovery deadlines and proposed discovery plan. The parties are not presently considering entering a stipulated e-discovery order, nor are they aware of the existence of any discovery disputes at this time.  However, the parties do anticipate entering into and presenting to the Court a standard stipulated protective order governing the dissemination and use of confidential materials in this action.

**IX.  CLASS ACTIONS**

This matter is not a class action.

**X.  RELATED CASES**

Plaintiff:  There are no related cases other than the associated criminal case against Plaintiff. That matter is no longer pending, as the charges were dismissed.

Defendants:  Defendants are not aware of any related cases.

**XI.  RELIEF**

Plaintiff seeks a judgment in his favor. Plaintiff seeks monetary damages for past and future emotional distress, pain and suffering, medical expenses, and lost wages. Plaintiff also seeks reasonable attorney's fees and costs.

**XII.  SETTLEMENT AND ADR**

A settlement conference has been scheduled for January 23, 2024 before the Honorable Magistrate Judge Sallie Kim.

ADR certification statements by each party have been filed as well.

**XIII.  OTHER REFERENCES**

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### XIV. NARROWING OF ISSUES

The parties will seek to narrow issues via the discovery process, meeting and conferring, and motion(s) for summary or partial summary judgment following discovery. After investigation, Plaintiff narrowed the issue of liable defendants and filed a Notice of Voluntary Dismissal against Defendant Evan Farmer on 10/11/23. Both parties reserve the right to seek bifurcation of issues if the need arises.

### XV. EXPEDITED TRIAL PROCEDURE

The parties presently do not anticipate a need for an expedited trial procedure.

### XVI. SCHEDULING

Pursuant to the Court's Case Management Scheduling Order (Docket No. 19):

Last day to amend the pleadings: 12/1/2023

Last day of fact discovery: 8/24/2024

Settlement conference scheduled: 1/23/2024

Expert disclosure and reports due: 10/4/2024

Rebuttal expert disclosures and reports due: 11/6/2024

Close of expert discovery: 11/22/2024

Last day for dispositive motions to be heard: 12/12/2024

Pretrial conference and *Daubert* motion hearing: 2/20/2025

First day of trial: 3/3/2025

### XVII. TRIAL

A jury trial lasting five to seven court days is anticipated by the parties.

### XVIII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

There are no currently known non-party interested entities or persons.

### XIX. PROFESSIONAL CONDUCT

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**XX. OTHER**

No other items.

Dated: /s/ November 9, 2023

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE

By: _____/s/*Marlon Monroe*_____
MARLON L. MONROE
Attorneys for Plaintiff,
KEITH BRYANT

Dated: /s/ November 9, 2023

By: _____/s/*Nicholas D. Fine*_____
NICHOLAS D. FINE
Attorneys for Defendant,
CITY OF RICHMOND

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case, and all parties shall comply with its provisions.

Other Orders: _____

_____

IT IS SO ORDERED.

Dated: _____

_____
MAGISTRATE JUDGE